UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NANCY T.,                                          :
        Plaintiff,                              :
                                                :
        v.                                      :        C.A. No. 20-420WES
                                                :
KILOLO KIJAKAZI,                                   :
Acting Commissioner of Social Security,            :
        Defendant.                              :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On September 10, 2018, Plaintiff Nancy T., a high school graduate with CNA training who is "closely approaching advanced age," filed her third set of disability applications, seeking Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1]  As pertinent to this case, Plaintiff claims that she suffers from numbness in her toes and neuropathy principally affecting the left lower extremity, and from mental health impairments, including bipolar disorder, depression, anxiety and attention deficit hyperactivity disorder ("ADHD").

On October 25, 2019, in reliance on what she found to be the persuasive opinions of the non-examining expert psychologists, Dr. Gordon Clifford and Dr. Jeffrey Hughes, and the non-examining expert physicians Dr. Henry Laurelli and Dr. Donn Quinn, the administrative law judge ("ALJ") made the Step Two finding that toe numbness and neuropathy are not severe and

---

[1] The record reflects prior applications filed on June 4, 2015, and March 16, 2017.  Tr. 65-75 & n.1.  Both sets were denied based on decisions by administrative law judges ("ALJ"), issued respectively on November 8, 2016, and June 28, 2018.  Id.  Plaintiff's alleged onset date for the current set of applications is March 1, 2015, but her attorney amended that date at the hearing to June 29, 2018, based on the June 28, 2018, ALJ decision.  Tr. 60-61.  The ALJ decision that is currently under review does not mention the amendment, but adjudicates the claim based on March 1, 2015, as the alleged onset date.  Plaintiff's brief states that the alleged onset date was amended to June 29, 2018, but makes no complaint about the ALJ's approach.  ECF No. 15 at 2.  With both the ALJ and the parties relying on records for the period prior to and after June 29, 2018, this confusion will not be addressed further in this report and recommendation.

the residual functional capacity ("RFC")[2] finding that Plaintiff's ability to work is significantly limited by her severe mental impairments of depression disorder, anxiety disorder, ADHD and substance abuse disorder (cocaine, cannabis and alcohol). The ALJ rejected as unpersuasive two treating source opinions from Thundermist Health Center ("Thundermist"), one from Plaintiff's primary care physician, Dr. Richmond Ramirez, and the other from her therapist, Linda Cardillo, LICSW. Based on these findings, the ALJ concluded that, since her alleged onset date, Plaintiff has retained the ability to carry out object-oriented tasks that are basic, routine, repetitive and familiar, with only occasional work-related interaction with co-workers, supervisors and the public. With this RFC, the ALJ found that there was work that Plaintiff could perform. The Acting Commissioner of Social Security ("Commissioner") denied Plaintiff's applications.

Now pending before the Court is Plaintiff's motion for reversal of the decision of the Commissioner. ECF No. 15. In response, the Commissioner argues that the ALJ properly applied the law to the substantial evidence of record and has filed a counter motion to affirm the denial of benefits. ECF No. 18. The motions have been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.   <u>Standard of Review</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. <u>Brown v. Apfel</u>, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), <u>aff'd</u> 230 F.3d 1347 (1st Cir. 2000) (per curiam).

---

[2] "RFC" or "residual functional capacity" is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).  The determination of substantiality is based upon an evaluation of the record as a whole.  Brown, 71 F. Supp. 2d at 30; Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court must consider evidence detracting from evidence on which Commissioner relied).  The Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30. "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

## II.   **Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.[3]  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.   **The Five-Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520.  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work

---

[3] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For simplicity, I cite only to one set of these regulations.

activities, then the claimant does not have a severe impairment and is not disabled.  20 C.F.R. §
404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R.
Part 404, Appendix 1, the claimant is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's
impairments do not prevent doing past relevant work, the claimant is not disabled.  20 C.F.R. §
404.1520(e)-(f).  Fifth, if a claimant's impairments (considering RFC, age, education and past
work) prevent doing other work that exists in the local or national economy, a finding of disabled
is warranted.  20 C.F.R. § 404.1520(g).  The claimant bears the burden through Step Four; it
shifts to the Commissioner at Step Five.  Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020).

### B.    Opinion Evidence

To assess opinion evidence, an ALJ must consider the persuasiveness of medical
opinions in the case record.  See 20 C.F.R. § 404.1520c.  The most important factors are
supportability and consistency; these are usually the only factors the ALJ is required to
articulate.  20 C.F.R. § 404.1520c(b)(2); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL
3562689, at *5 (D.N.H. Aug. 6, 2019).  Supportability "includes an assessment of the supporting
objective medical evidence and other medical evidence, and how consistent the medical opinion
or . . . medical finding[] is with other evidence in the claim."  Revisions to Rules Regarding the
Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017).  Weighed in light of
the evidence of record, the ALJ may consider the medical source's relationship with the claimant
and specialization, as well as "other factors" that tend to support or contradict the medical
opinion or finding.  See 20 C.F.R. § 404.1520c(c)(1)-(5).

### C.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen v. Chater, 172
F.3d 31, 36 (1st Cir. 1999).  The ALJ must consider a claimant's statements about pain and

determine the extent to which is reasonably consistent with the objective medical evidence.  SSR

16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017); 20 C.F.R. § 404.1529(c)(3).  In

determining whether the medical signs and laboratory findings show medical impairments which

reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's

six-factor pain analysis.  Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 28-29 (1st Cir.

1986).  An individual's statement as to pain is not conclusive of disability.  42 U.S.C. §

423(d)(5)(A).

> **D.     Claimant's Subjective Statements**

A reviewing court will not disturb a clearly articulated credibility finding with substantial

supporting evidence in the record.  See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d

192, 195 (1st Cir. 1987).  Guidance in evaluating the claimant's statements regarding the

intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p,

2017 WL 4790249, at *49462.  It directs the ALJ to consider the entire case record, including the

objective medical evidence; the individual's statements; statements and other information

provided by medical sources and other persons; any other relevant evidence; and whether the

subjective statements are consistent with the medical signs and laboratory findings.  Id., at

*49464-65.

**III.    Analysis**

> **A.     The ALJ's Step Two Determinations – Neuropathy**

Plaintiff's challenge to the ALJ's Step Two determination rests principally on her

argument that neuropathy is a diagnosed impairment that should have resulted in the assignment

of "proper" physical limitations.[4]  ECF No. 15 at 2.  In support of this argument, she directs the

---

[4] Plaintiff also mentions in passing that the ALJ should have "adequately" considered obesity at Step Two.  ECF No.
15 at 9.  The problem with this undeveloped argument is the ALJ did properly consider obesity as part of her Step

Court to her subjective claim during the hearing – that numbness and tingling make it hard for her to stand or walk – and on the fact that the diagnosis of neuropathy was confirmed by electromyography ("EMG").  Without citation to any medical source (and ignoring that the ALJ did rely on the expert analysis of the objective findings in the EMG done by the non-examining physicians), Plaintiff contends that the objective findings in the EMG required the ALJ to call a medical expert and to establish limitations impacting her ability to stand and walk.

This argument fails because the ALJ's Step Two analysis acknowledges that Plaintiff suffered from the impairment diagnosed by the EMG and because the challenged determination rests on the ALJ's evidence-based finding of the degree to which this diagnosis limited Plaintiff's ability to function.  In that regard, the ALJ's approach is consistent with the well-settled proposition that "mere diagnosis of a condition says nothing about the severity of the condition."  Keach v. Berryhill, Civil Action No. 17-cv-10133-ADB, 2018 WL 1440316, at *12 (D. Mass. Mar. 22, 2018) (citation and internal quotation marks omitted).  Here, the ALJ considered the medical evidence and Plaintiff's testimony and statements about her activities, as well as (most critically) the opinions of the non-examining physicians, who reviewed both the EMG and the follow-up MRI, and the balance of the available medical record.  In so doing, the ALJ noted that "the record contains relatively little evidence of limitation attributable to this condition," including that, by Plaintiff's annual physical in March 2019, toe numbness/neuropathy is not even mentioned as an issue for potential treatment.  Tr. 18; see Tr. 391-92 (notes of Plaintiff's annual physical reflect "[n]o subjective complaints" and "essentially normal" physical exam, despite Plaintiff's telling Dr. Ramirez that she cannot work because she

Two analysis; her decision correctly cites to the relevant guidance in SSR 19-2p, 2019 WL 2374244 (May 20, 2019), and is appropriately grounded in the medical evidence.  Tr. 18.  The argument is deemed waived.  Melissa G. v. Kijakazi, C.A. No. 20-00367-WES, 2021 WL 3124228, at *8 (D.R.I. July 23, 2021) ("throw-in arguments left for the Court to sort out on its own . . . are deemed waived").  If it were not waived, it should fail on the merits.

6

cannot stand or walk).  The Court's review of the record confirms that this finding is well

grounded in substantial evidence.  E.g., Tr. 287 (Dr. Ramirez orders MRI based on complaint of

toe numbness but prescribes no treatment); Tr. 293 (Dr. Ramirez notes that complaint of toe

numbness reflects "very vague symptoms"); Tr. 296, 401, 442 (at appointments in March 2018

and January and June 2019, Dr. Ramirez makes normal findings on physical examination; no

mention of neuropathy); Tr. 401 (Dr. Ramirez comments on Plaintiff's desire "to have disability

because of spinal stenosis" and advises Plaintiff that MRI shows mild disease); Tr. 435 (at

appointment to "[g]o over Social Security claims," Plaintiff complains of toe numbness causing

extreme pain; Dr. Ramirez prescribes no treatment but refers her to podiatrist because she wants

her toes checked and advises her "to go to a disability determination doctor").  Also well

supported is the ALJ's finding that the evidence of Plaintiff's activities corroborates this Step

Two determination.  See, e.g., Tr. 40 (Plaintiff testifies that she does not use a cane); Tr. 48

(Plaintiff testifies that she cared for friend's dog for week); Tr. 49 (Plaintiff testifies that she tries

to dance and walks for exercise); Tr. 405 (Plaintiff tells therapist she enjoys gardening); Tr. 444

(Plaintiff tells nurse practitioner that she gets together with a friend once a week and they "go out

shopping or to their houses").  Nor has Plaintiff pointed to anything (beyond her testimony) that

undermines this finding.

      Equally unavailing is Plaintiff's contention that the case should be remanded because the

ALJ did not perform an Avery analysis of Plaintiff's neuropathy.  The argument fails because the

ALJ did consider Plaintiff's claim of numbness in her toes; the decision specifically notes the

lack of any treatment for this condition (including no pain medication) and the lack of any

impact on functionality or on her activities of daily living.  This is what is mandated by the

Avery rubric.  Avery, 797 F.2d at 29.  There is no need for an Avery remand when, as happened

here, the ALJ considered evidence in the record in conformance with the <u>Avery</u> requirements. <u>See</u> <u>Blyther v. Chater</u>, 931 F. Supp. 60, 66 (D. Mass. 1996).

Based on the foregoing, I find that the ALJ's Step Two finding – "peripheral neuropathy does not have more than minimal impact of the claimant's ability to perform basic work activities," Tr. 18, – is well supported by the evidence and should be affirmed by the Court.[5]

**B.      The ALJ's RFC Findings – Mental Health Impairments**

The ALJ found that Plaintiff suffers from the seriously impairing mental health conditions of depressive disorder, anxiety disorder, ADHD and substance abuse disorder. Plaintiff contends that the ALJ's findings do not encompass the true scope of her impairments and symptoms.  In support, she contends that the ALJ made two material errors.  First, she points out that her operative diagnosis is bipolar disorder and argues that the ALJ ignored this impairment (and associated functional limitations) and assessed limitations based only on depressive disorder and anxiety disorder.  Second, she contends that the ALJ erred in finding the opinions of Dr. Ramirez, the primary care physician, and Ms. Cardillo, the social worker/therapist, to be unpersuasive, as well as in relying on the findings of non-examining expert psychologists because those psychologists did not see these treating source opinions.[6]

1.      <u>ALJ's Treatment of Mental Health Opinion Evidence</u>

---

[5] Because the ALJ did not err at Step Two, there is no need to consider the Commissioner's argument that a Step Two error is necessarily harmless when the ALJ continues the sequential evaluation of the claim.  <u>Michael H.B. v. Berryhill</u>, C.A. No. 17-530WES, 2018 WL 4178255, at *3 (D.R.I. Aug. 6, 2018).

[6] Plaintiff also makes other arguments that clearly amount to the request that the Court reweigh conflicting evidence.  <u>See</u> ECF No. 15 at 13.  For example, she asks the Court to remand based on a reference that reflects her statement to one treating source that she was hallucinating about seeing bugs; however, she ignores that, by the next appointment with the same treating source, she had acknowledged that this was not a hallucination, Tr. 285, 287, as well as that these notations were analyzed by the non-examining experts, Dr. Gordon and Dr. Hughes.  Plaintiff's request for remand based on these arguments should be rejected.

I begin with Plaintiff's second argument, which tackles the ALJ's treatment of the opinion evidence. This requires a brief survey of the record reflecting mental health treatment beginning in 2014, all of which treatment was with various providers at Thundermist.

In 2014 through early 2016, Plaintiff saw a licensed social worker for therapy and a psychiatric mental health nurse practitioner to prescribe medication. The mental status examinations ("MSE")[7] during this period consistently note her cooperativeness and focused attention, but that her mood was sometimes stable or improving and sometimes variable or depressed, occasionally anxious. E.g., Tr. 321, 324. Following a year-long gap of no treatment, Plaintiff resumed in February 2017, when she began seeing Dr. Ramirez for primary care. Tr. 310. In May 2017, Plaintiff began to see a therapist and, in September 2017, a psychiatric mental health nurse practitioner to prescribe medication. Tr. 305-07. Mental health treatment was sporadic, sometimes once a month but with gaps of up to four months. MSE findings reflect cooperative behavior; the nurse prescribing medication made largely normal findings, while the therapist noted variable mood and sometimes distractible attention. E.g., Tr. 295, 303, 306. Of note, Plaintiff told the therapist that "she is here today because her lawyer wants her in therapy for her disability." Tr. 295. In March and May 2017, apparently in connection with her prior applications,[8] Plaintiff was evaluated by Dr. Francis Sparadeo, who performed neuropsychological tests revealing low average intelligence, depression, anxiety and mild

---

[7] The mental status examination or MSE is an objective clinical assessment of an individual's mental ability, based on a health professional's personal observation, where "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation." Lilibeth G. v. Kijakazi, C.A. No. 20-474WES, 2021 WL 5049377, at *1 n.4 (D.R.I. Nov. 1, 2021), adopted, 2021 WL 5631745 (D.R.I. Dec. 1, 2021) (citation and internal quotation marks omitted).

[8] The Sparadeo report does not reveal its genesis, but Plaintiff refers to it as a consulting examination report. ECF No. 15 at 12.

difficulty with attention, resulting in diagnoses of depressive disorder, anxiety disorder, bipolar disorder and (provisionally) PTSD and ADHD. Tr. 412-22. Also during 2017, in connection with her prior applications, Plaintiff was examined by a psychologist (Dr. Louis Turchetta), who concurred in the diagnoses of bipolar, depressive and anxiety disorder, as well as PTSD and ADHD, but opined that Plaintiff could understand and follow simple directions. Tr. 70,72-73.

In June 2018, Plaintiff began to see a new psychiatric mental health nurse practitioner for medication management, Nurse Alexandra Chabot, who continued to provide mental health treatment at regular intervals to the end of the period in issue. At the initial diagnostic interview, Nurse Chabot took a history (noting three past psychiatric hospitalizations), and made MSE observations, *inter alia*, of pleasant, cooperative behavior, depressed mood, circumstantial speech and thought and distractible attention; she diagnosed bipolar disorder, anxiety disorder and cocaine abuse. Tr. 289-91. At the next appointment in October 2018, MSE observations were similar but included slight body rocking in response to anxiety, improved attention and "okay" mood; Plaintiff stated that she would "consider individual therapy in future for management of anxiety/relationship stressors but doesn't feel she needs this presently." Tr. 285-86. During 2018, Dr. Ramirez once noted moderately severe depression based on the PHQ9 screening tool, although his notes contain no clinical MSE observations and reflect no mental health treatment. Tr. 287, 293, 296.

This robustly developed record was reviewed by Dr. Gordon at the initial phase and by Dr. Hughes on reconsideration. Dr. Gordon found moderate limitations in all spheres except for the ability to adapt as to which he assigned no limits; opining on January 11, 2019, Dr. Hughes concurred. Tr. 81-84, 95-97. After her claim was administratively denied on reconsideration, Plaintiff continued mental health treatment at Thundermist.

10

In January 2019, Plaintiff told Nurse Chabot that she was applying again for disability and wanted "to try individual therapy for support w/ coping w/ situational stressors." Tr. 406. Soon after, Plaintiff began to see Ms. Cardillo. Ms. Cardillo's MSE observations include: cooperative attitude, intact memory and cognitive function and minimal impairment of judgment and insight but mood swings, poor eye contact, tangential speech and obsessive thoughts. Tr. 404-05. In February and March 2019, Ms. Cardillo made similar MSE observations, but after a treatment gap, Ms. Cardillo noted in May 2019, "[m]ood has been better, more motivated, . . . [h]as GF that gets together with about once a week and go out shopping or to their houses." Tr. 444. In the remaining notes, Ms. Cardillo noted "Eye Contact: appropriate"; otherwise, her MSE observations are the same. Tr. 431, 433, 437. Throughout 2019, Plaintiff continued to see Nurse Chabot for medication management; her MSE observations are largely similar to those made during 2018. Also during 2019, Plaintiff continued to see Dr. Ramirez. As during the prior period, his notes continued to reflect nothing about mental health, except as a basis for Plaintiff seeking disability. Tr. 391, 435, 442; see Tr. 435 ("would like to go for disability for her depression").

Both Dr. Ramirez and Ms. Cardillo filled in "Medical Source Statements" that were submitted in support of Plaintiff's disability applications. Dr. Ramirez signed his on February 19, 2019, Tr. 370, and Ms. Cardillo's was signed on September 9, 2019, Tr. 425. Both opine to extreme, work-precluding mental limitations.[9] Plaintiff argues that it was error for the ALJ to push aside these treating source opinions as unpersuasive.

---

[9] The Court observes that, in addition to checking boxes regarding specific mental functions, the Ramirez/Cardillo opinions both assign a GAF score of 60 as an overall assessment of Plaintiff's symptoms or ability to function. Tr. 370, 425. While the GAF rubric has fallen out of use since it was dropped by DSM-5 (Am. Psychiatric Ass'n, Diagnostic and Stat. Manual of Mental Disorders (5th ed. 2013)), the Court observes that a GAF score of 60 denotes "moderate" symptoms or difficulties, Hall v. Colvin, 18 F. Supp. 3d 144, 153 (D.R.I. 2014), which synchs with the assessments of Dr. Gordon and Dr. Hughes that Plaintiff was "Moderately Limited." Tr. 83, 97.

As to the Ramirez opinion, the Court need not linger.  With very little involvement with Plaintiff's mental health and none at all in the period that is proximate to this opinion, the ALJ is right in finding that the Ramirez opinion is "wholly unsupported by Dr. Ramirez's treatment notes" in that they contain "little evidence of mental health complaints and/or evaluations."  Tr. 22.  Indeed, while the form is signed by Dr. Ramirez, it appears to have been filled in by Ms. Cardillo,[10] who had seen Plaintiff only twice as of February 19, 2019, when it was signed.  There is no error in the ALJ's well-supported finding that this opinion is unpersuasive.

The Cardillo opinion that was signed on September 9, 2019, Tr. 425, has more substance in that, by then, Ms. Cardillo had provided therapy for almost nine months.  The problem is that the ALJ correctly found that the boxes checked on the form clash with Ms. Cardillo's own treating notes.  To take the most extreme example, the ALJ observes that Ms. Cardillo's opinion states that Plaintiff has no useful ability to function with respect to understanding and remembering short simple instructions, as well as that she has low insight, Tr. 425, 477, yet Ms. Cardillo's MSE observations consistently reflect intact memory, intact cognitive function/general knowledge and minimal impairment of judgment and insight.  Tr. 22.  The ALJ appropriately contrasted these and other extreme limitations that Ms. Cardillo noted on the form with the lack of any recommendation for treatment more intensive than thirty-minute therapy sessions every two or three weeks, as well as the discordance between, for example, "no useful ability to function" in interacting with the public and the reality of Plaintiff's activities and moderately impaired ability to relate to others as reflected in the balance of the record.  E.g., Tr. 43 ("I have

---

[10] To illustrate with just one example, on the form's top line, where the provider filling in the form is asked to indicate the "frequency and length of contact" with the patient, the handwritten notation reflects the dates of Ms. Cardillo's first two appointments; Dr. Ramirez did not see Plaintiff on either of the days written on the form.  Tr. 370.  The first page of the form also states that the provider filling in the form has "bi-weekly sessions" with the patient, which is what Ms. Cardillo's notes reflect (although the actual interval is frequently greater).  Dr. Ramirez never had "biweekly sessions" with Plaintiff.

quite a few friends"); id. ("I got along with [coworkers] okay"; gets along with neighbors "[f]ine"); Tr. 52 ("I get a long [sic] with [strangers]. I have no problem getting along with people. I just don't go out of my way. I don't feel comfortable."). In short, the ALJ's foundation for finding the Cardillo opinion to be unpersuasive is well supported by substantial evidence. There is no error.

Plaintiff's final opinion-based argument focuses on the reality that the non-examining psychologists did not see these two unpersuasive Thundermist treating source opinions because they were not submitted until after the claims were denied at the reconsideration phase. To be clear, Plaintiff does not argue that the lack of the Thundermist 2019 treating records "detracts from the weight that can be afforded the[] opinions" of the non-examining psychologists. Virgen C. v. Berryhill, C.A. No. 16-480 WES, 2018 WL 4693954, at *3 (D.R.I. Sept. 30, 2018). Rather, she concedes by silence that the ALJ correctly found that the 2019 mental health treating records reflect essentially the same limitations as were reflected in the treating records that the non-examining psychologists analyzed. Tr. 22 ("their assessments continue to be consistent with the additional evidence submitted at the hearing level"). Instead, in passing, and without explaining how or why, she contends that the Ramirez/Cardillo opinions contain a medical interpretation of the Thundermist clinical findings that "could have changed the opinions of the examiners." ECF No. 15 at 13.

It is well settled that an ALJ may rely on the non-examining expert findings as long as there is substantial evidence to support her commonsense finding that the pre-and post-review records are similar. Jennifer F. v. Saul, C.A. No. 19-547MSM, 2020 WL 6488706, at *6-7 (D.R.I. Sept. 16, 2020), adopted, 2020 WL 6487813 (D.R.I. Nov. 4, 2020); Michele S. v. Saul, C.A. No. 19-65WES, 2019 WL 6242655, at *8 (D.R.I. Nov. 22, 2019). To hold otherwise would

render such opinions irrelevant because of the practical impossibility that such experts can be privy to updated medical records; it is well settled that this approach "would defy logic and be a formula for paralysis." Sanford v. Astrue, No. CA 07-183 M, 2009 WL 866845, at *8 (D.R.I. Mar. 30, 2009) (citing Kendrick v. Shalala, 998 F.2d 455, 456-57 (7th Cir. 1993)). That is what the ALJ did here when she found that the non-examining psychologists' assessments "continue to be consistent with the additional evidence submitted at the hearing level." Tr. 22. The correctness of this determination has been confirmed by the Court's review of the 2019 Thundermist treating record. Also error-free is the ALJ's finding that the Ramirez/Chabot opinions lack persuasive force. It follows, therefore, that these unpersuasive opinions do not "detract[] from the weight that can be afforded the[] opinions" of the non-examining psychologists. Virgen C., 2018 WL 4693954, at *3. The non-examining experts' failure to consider unpersuasive opinions does not taint their findings and the ALJ did not err in relying on their conclusions.

I do not recommend remand of the matter for further proceedings regarding the mental health opinion evidence.

2.     The ALJ's Omission of Bipolar Disorder

Plaintiff is right that, throughout the period in issue, she was unambiguously and consistently diagnosed with bipolar disorder, yet the ALJ's decision omits any reference to bipolar disorder. This omission is unquestionably an error. Vanessa C. v. Kijakazi, C.A. No. 20-363MSM, 2021 WL 3930347, at *5 (D.R.I. Sept. 2, 2021). However, such an error is harmless if the ALJ nevertheless properly assessed the claimant's ability to function in light of the overall impact of all of her mental impairments. Id. (citing White v. Colvin, No. CA-14-171 S, 2015 WL 5012614, at *9 (D.R.I. Aug. 21, 2015)). In this case, I find that the error is harmless because

the non-examining psychologists, on whom the ALJ relied, did not make this error and because, despite the ALJ's erroneous labeling of Plaintiff's condition, she properly considered all of Plaintiff's relevant symptoms.

The Disability Determination Explanations ("DDEs") in this case are crystal clear that bipolar disorder was accepted as Plaintiff's primary operative mental health diagnosis. In the expert psychologists' analyses, they label the pertinent impairment (which they found to be severe) as "Depressive, <u>Bipolar</u> and Related Disorders," which is designated in the DDE as Diagnostic Code 2960 and Listing 12.04. Tr. 80-82, 94-96 (emphasis supplied). In adopting the psychologists' findings based on their analysis of this impairment, the ALJ used the term, "Depressive disorder," omitting the rest of the label that appears in the psychologists' DDEs. Tr. 17. Importantly, it is their expert analysis of the clinical significance of what appears in the medical record that is the foundation of the ALJ's findings regarding the functional impact of Plaintiff's mental impairments. The ALJ's decision is clear that these assessments are what she relied on for her RFC finding; indeed, her RFC tracks their findings precisely. <u>Vanessa C.</u>, 2021 WL 3930347, at *5. In addition, it is also clear that the ALJ carefully surveyed all of the medical evidence and carefully considered the severity of all of Plaintiff's mental symptoms; there are no symptoms that she disregarded because of this error. In that regard, this case is very different from the circumstances in <u>Kimberly P. v. Kijakazi</u>, C.A. No. 20-00375-MSM, 2021 WL 4932743 (D.R.I. Oct. 22, 2021), where the omitted diagnosis caused the ALJ not to consider symptoms such as psychosis, auditory command hallucinations and suicidal ideation. <u>Id.</u> at *6. In this case, all symptoms were properly considered; it was only in labeling the impairment that the ALJ stumbled.

Because the administrative findings of these expert psychologists provide substantial evidence to support the ALJ's assessment of Plaintiff's mental functioning, the omission of "bipolar" from the label used by the ALJ is harmless error. Vanessa C., 2021 WL 3930347, at *5. I do not recommend remand on this basis.

## IV.    Conclusion

Since Plaintiff has shown no material error in the ALJ's evaluation of the medical evidence or in her ultimate findings, and those findings are adequately supported by the record, the ALJ's decision must be affirmed. Based on the foregoing, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 15) be DENIED and Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 18) be GRANTED. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 7, 2022